JAMES M. MCDONALD
United States Attorney
Southern District of New York
Attorney for the United States of America
By: MALLIKA BALACHANDRAN
DAVID J. KENNEDY
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2781/2733
mallika.balachandran@usdoj.gov
david.kennedy2@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STAGG GROUP,<br><br>Defendant. | **COMPLAINT**<br><br>26 Civ. _____ (____) |

Plaintiff the United States of America (the "United States") alleges as follows:

1. This action is brought by the United States to enforce the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988 (the "Fair Housing Act" or the "FHA"), 42 U.S.C. §§ 3601-3619.

2. As set forth below, the United States alleges that defendant Stagg Group ("Defendant") has unlawfully discriminated against persons with disabilities under the FHA by failing to design and construct multifamily buildings and associated places of public accommodation to be accessible to persons with disabilities.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3614(a).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims asserted in this action arose in this District, and because properties that are the subject of this action are located in this District.

## THE PARTIES

5. Plaintiff is the United States of America.

6. Defendant Stagg Group, directly and/or acting through affiliates, subsidiaries, or entities that it owns and/or controls, is a New York corporation based in New York. Stagg Group, directly or through affiliates, subsidiaries, or entities that it owns and/or controls, has been involved in real estate development since in or about 1996. Stagg Group was the developer of each of the multifamily buildings identified in this complaint, and in that capacity, participated in the design and construction of those buildings. Stagg Group, directly or through affiliates, subsidiaries, or entities that it owns and/or controls, manages the multifamily buildings identified in this complaint.

## INACCESSIBLE CONDITIONS IN STAGG'S MULTIFAMILY BUILDINGS

7. The Stagg Group has designed numerous multifamily buildings after March 13, 1991, including 3745 Riverdale Avenue, Bronx, NY 10463 ("Riverdale Tower"), 5959 Broadway, Bronx, NY 10463 ("The Station"), 6327 Broadway, Bronx, NY 10471 ("The Hudson"), 6375 Broadway, Bronx, NY 10471 ("The Stables"), 1680 Pelham Parkway South, Bronx, NY 10461 ("The Equestrian"), and 26 Garden Street in New Rochelle, New York ("West View") (together, the "Inspected Properties"). Inspections of each building found them to be inaccessible to persons with disabilities.

8. Riverdale Tower consists of a tower with elevator access and contains 89 dwelling units, as well as public and common use areas that include a resident lounge, work space, outdoor entertainment/recreation area, and fitness room.

9. The Station consists of a tower with elevator access and contains 72 dwelling units, as well as public and common use areas that include a fitness room.

10. The Hudson consists of a tower with elevator access and contains 90 dwelling units, as well as public and common use areas that include a resident lounge, garage, and fitness room.

11. The Stables consists of a tower with elevator access and contains 42 dwelling units, as well as public and common use areas that include a community room, garage, laundry room, and fitness room.

12. The Equestrian consists of a tower with elevator access and contains 129 dwelling units, as well as public and common use areas that include a rooftop terrace, laundry room, garage, and fitness room.

13. West View consists of a tower and contains 185 dwelling units, as well as public and common use areas that include a laundry room and fitness room.

14. The Inspected Properties are all multifamily buildings with elevator access. The units in those complexes are "dwellings" within the meaning of 42 U.S.C. § 3602(b) and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

15. Each of the Inspected Properties was designed and constructed for first occupancy after March 13, 1991. Thus, the dwelling units at those complexes are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7) and 24 C.F.R. § 100.21, and all three

complexes are subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205(a), (c).

16. Although Stagg Group was required to comply with the FHA's accessible design and construction requirements in developing multifamily complexes such as Riverdale Tower, The Station, The Hudson, The Stables, The Equestrian, and West View, it has consistently failed to do so.

17. Riverdale Tower, which Stagg Group designed and constructed in 2024, is inaccessible to persons with disabilities.

18. Stagg Group designed and constructed Riverdale Tower with inaccessible features, including but not limited to:

a. In individual units, there is insufficient clear floor space outside the swing of the door in the studio bathroom.

b. In individual units, the centerline of the lavatory in the studio bathroom is less than 24" from the adjacent wall with no removable cabinet.

c. The ramp of the entrance to the outdoor entertainment space is not accessible to persons who use wheelchairs because it is excessively steep and missing a handrail.

d. The side entry from the building to the outdoor space is not accessible to persons who use wheelchairs because furniture interferes with sufficient maneuvering space.

e. There is insufficient clear floor space and inaccessible controls at the pet washing station.

f. There is no designated van accessible parking space with signage in the covered or outdoor parking area, and no signage for a designated accessible parking space in the covered lot.

19. In light of the inaccessible conditions identified in paragraph 18, above, Stagg Group failed to design and construct Riverdale Tower in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Stagg Group failed to

comply with applicable State and local design and construction provisions, including New York City Local Law 58, in designing and constructing Riverdale Tower.

20. The Station, which Stagg Group designed and constructed in 2018, is inaccessible to persons with disabilities.

21. Stagg Group designed and constructed The Station with inaccessible features, including but not limited to:

a. In individual units, the entry threshold is not accessible to persons who use wheelchairs because it is too high.

b. In individual units, the threshold to the bathroom is not accessible to persons who use wheelchairs because it is too high.

c. In individual units, the doorway to the bathroom is not accessible to persons who use wheelchairs because it is too narrow.

d. In individual units, multiple outlets are inaccessible to persons with disabilities because they are not high enough from the floor.

e. The fitness center is inaccessible to persons who use wheelchairs because it is accessible only by stairs.

f. The top row of mailboxes is not accessible to persons who use wheelchairs because it is located too high.

22. In light of the inaccessible conditions identified in paragraph 21, above, Stagg Group failed to design and construct The Station in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Stagg Group failed to comply with applicable State and local design and construction provisions, including New York City Local Law 58, in designing and constructing The Station.

23. The Hudson, which Stagg Group designed and constructed in 2022, is inaccessible to persons with disabilities.

24. Stagg Group designed and constructed The Hudson with inaccessible features, including but not limited to:

a. In individual units, the balcony door is inaccessible to persons who use wheelchairs because the doorway is not wide enough.

b. In individual units, the threshold to the balcony is not accessible to persons who use wheelchairs because it is too high and unbeveled.

25. In light of the inaccessible conditions identified in paragraph 24, above, Stagg Group failed to design and construct The Hudson in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Stagg Group failed to comply with applicable State and local design and construction provisions, including New York City Local Law 58, in designing and constructing The Hudson.

26. The Stables, which Stagg Group designed and constructed in 2022, is inaccessible to persons with disabilities.

27. Stagg Group designed and constructed The Stables with inaccessible features, including but not limited to:

a. In individual units, the entry threshold is not accessible to persons who use wheelchairs because it is too high.

b. In individual units, the threshold to the bedroom is not accessible to persons who use wheelchairs because it is too high.

c. In individual units, the thermostat is inaccessible to persons who use wheelchairs because it is too high.

28. In light of the inaccessible conditions identified in paragraph 27, above, Stagg Group failed to design and construct The Stables in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Stagg Group failed to comply with applicable State and local design and construction provisions, including New York City Local Law 58, in designing and constructing The Stables.

29. The Equestrian, which Stagg Group designed and constructed in 2016, is inaccessible to persons with disabilities.

30. Stagg Group designed and constructed The Equestrian with inaccessible features, including but not limited to:

a. The front entry to the building is not accessible to persons who use wheelchairs because there is a non-automatic door requiring excessive force.

b. Mailboxes are not accessible to persons who use wheelchairs because they are located too high.

c. In the gym area, the centerline of the lavatory in the bathroom is less than 24" from the adjacent wall with no removable cabinet.

d. There is a level change on the accessible route to ground-level patio area greater than ½" with no bevel.

e. Certain trash rooms lack adequate maneuvering space by persons who use wheelchairs, and the door hardware is inaccessible because the hardware requires grasping and/or twisting.

f. The pet area is not accessible to persons who use wheelchairs because the threshold is too high and there are no accessible pathways due to protruding objects.

31. In light of the inaccessible conditions identified in paragraph 30, above, Stagg Group failed to design and construct The Equestrian in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Stagg Group failed to comply with applicable State and local design and construction provisions, including New York City Local Law 58, in designing and constructing The Equestrian.

32. West View, which Stagg Group designed and constructed in 2024, is inaccessible to persons with disabilities.

33. Stagg Group designed and constructed West View with inaccessible features, including but not limited to:

a. The curb ramp near the entrance of the building is inaccessible to persons who use wheelchairs due to its running slope.

b. The laundry room lacks accessible route due to obstructions at the door entrances.

34. In light of the inaccessible conditions identified in paragraph 33, above, Stagg Group failed to design and construct West View in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Stagg Group failed to comply with applicable State and local design and construction provisions, including New York City Local Law 58, in designing and constructing West View.

**OTHER MULTIFAMILY PROPERTIES**

35. Defendant Stagg Group, directly and/or acting through affiliates, subsidiaries, or entities that it owns and/or controls, has participated in the design and construction of other covered multifamily properties including, but not limited to, 1001 Whitlock Avenue, Bronx, NY 10459; 410 East 203rd Street, Bronx, NY 10467; 21-07 Astoria Blvd, Astoria (LIC), NY 11102; and 223 Willett Avenue, Port Chester, NY 10573. Defendant Stagg Group's pattern or practice of failing to design and construct dwellings and public and common-use areas in compliance with the FHA, as alleged herein, may extend to these other multifamily properties and, absent injunctive relief, to other multifamily properties that are currently being designed and constructed by Stagg Group.

36. Redressing the effects of the pattern or practice of non-compliance with the FHA by Defendant requires, among other things, retrofits at all the buildings at issue in this action.

**FAIR HOUSING ACT CLAIMS**

37. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1–36 above.

38. Defendant has discriminated against persons with disabilities by designing and constructing multifamily buildings that qualify as "covered multifamily dwellings" in a manner that is not readily accessible to or useable by persons with disabilities, as required by 42 U.S.C. § 3604(f)(3)(C). Defendant has failed to design and construct these buildings in such a matter that:

a. the public use and common use portions of the dwellings are readily accessible to and useable by persons with disabilities;

b. all doors designed to allow passage into and within the dwellings are sufficiently wide to allow passage by persons who use wheelchairs for mobility; and

c. all premises within such dwellings contain the following features of adaptive design:

    i. an accessible route into and through the dwelling;

    ii. light switches, electrical outlets, thermostats, and/or other environmental controls in accessible locations;

    iii. reinforcements in bathroom walls to allow later installation of grab bars; and

    iv. useable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

39. Defendant, through the actions and conduct referred to in the preceding paragraphs, has:

a. Discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of a disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

b. Discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

c. Failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205.

40. This conduct constitutes:

a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, within the meaning of 42 U.S.C. § 3614(a); and

b. A denial to a group of persons of rights granted by the Act, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance, within the meaning of 42 U.S.C. § 3614(a).

41. Persons who may have been the victims of Defendant's discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries as a result of Defendant's conduct described above.

42. Defendant's discriminatory actions and conduct described above were intentional, willful, and taken in disregard for the rights of others.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an order that:

a. Declares that the conduct, policies, and practices of Defendant, as alleged herein, violate the Fair Housing Act;

b. Enjoins Defendant and its employees, agents, officers, successors, and all other persons in active concert or participation with any of them, from:

i. Failing or refusing to bring the dwelling units and public use and common use areas at covered multifamily housing complexes that they have designed and constructed into compliance with 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205;

ii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, persons harmed by their unlawful practices to the position they would have been in but for the discriminatory conduct;

iii. Designing and/or constructing any covered multifamily dwellings and public and common use areas in the future that do not contain the accessibility and adaptability features required by 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205; and

iv. Failing or refusing to conduct a compliance survey at covered multifamily housing complexes that they have designed and constructed to determine whether the retrofits ordered in sub-paragraph (i) above were made properly;

c. Enjoins Defendant from engaging in conduct that impedes any retrofits required to bring the subject properties, including covered multifamily dwelling units and public and

common use areas, into compliance with the FHA in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties;

d. Awards appropriate monetary damages, pursuant to 42 U.S.C. § 3614(d)(1)(B), to each person harmed by Defendant's discriminatory conduct and practices; and

e. Assesses a civil penalty against Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

The Government further prays for such additional relief as the interests of justice may require.

Date: New York, New York
September 25, 2026

JAMES M. MCDONALD
United States Attorney
Southern District of New York

By: __*/s/ David J. Kennedy*_____________
MALLIKA BALACHANDRAN
DAVID J. KENNEDY
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2781/2733
mallika.balachandran@usdoj.gov
david.kennedy2@usdoj.gov